AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) |
| THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (505) 261-5982 | ) |
| | ) |

**FILED**

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

Case No.   **20mr1542**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Distribution of, and possession with intent to distribute, controlled substances |
| 21 U.S.C. § 846 | Conspiracy |

The application is based on these facts:

The affidavit of Special Agent Larry Pantoja is incorporated herein by reference. AUSA Peter J. Eicker has approved this search warrant.

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* 02/18/2021 *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Gillian Polinko
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___ telephonically sworn and electronically signed ___ *(specify reliable electronic means).*

Date: ____ 10/21/2020 ____

City and state:  Albuquerque, New Mexico

_____
*Judge's signature*

Laura Fashing, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

The cellular telephone currently assigned telephone number (505) 261-5982

("**MONTOYA PHONE 7**"), subscribed to Prepaid Customer, 17330 Preston Road, Dallas,

Texas 75252, whose service provider is AT&T, a wireless telephone service provider with

headquarters at 11760 US Highway 1, Suite 300, N. Palm Beach, FL 33408.

Records and information associated with **MONTOYA PHONE 7** that is within the

possession, custody, or control of AT&T including information about the location of the cellular

telephone, even if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

### I.     Information to be Disclosed by the Provider

All information about the location of **MONTOYA PHONE 7** described in Attachment A

for a period of 30 days, during all times of day and night.  "Information about the location of

**MONTOYA PHONE 7** includes all available E-911 Phase II data, GPS data, latitude-longitude

data, and other precise location information, as well as all data about which "cell towers" (i.e.,

antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers)

received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter,

"Location Information") is within the possession, custody, or control of AT&T, AT&T is

required to disclose the Location Information to the government.  In addition, AT&T must

furnish the government all information, facilities, and technical assistance necessary to

accomplish the collection of the Location Information unobtrusively and with a minimum of

interference with AT&T services. The government shall compensate AT&T for reasonable

expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this

warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18

U.S.C. § 3103a(b)(2).

### II.    Information to Be Seized by the Government

All information described above in Section I that constitutes evidence and

instrumentalities of violations of 21 U.S.C. §§ 841 and 846 involving Eustacio MONTOYA and

yet unidentified co-conspirators.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (505) 261-5982 | Case No. _____ <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Gillian M. Polinko, Special Agent of the Drug Enforcement Administration (DEA),

being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal

Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location

of the cellular telephone assigned telephone number (505) 261-5982 ("**MONTOYA PHONE 7**"),

which is subscribed to Prepaid Customer, at 17330 Preston Road, Dallas, Texas 75252, whose

service provider is AT&T, a wireless telephone service provider with headquarters at 11760 US

Highway 1, Suite 300, N. Palm Beach, FL 33408.

2. The information to be searched is described in the following paragraphs and in

Attachment A. This affidavit is made in support of an application for a search warrant under 18

U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require AT&T to disclose

to the government the information further described in Section I of Attachment B. Upon receipt of

the information described in Section I of Attachment B, government-authorized persons will

review the information to locate items described in Section II of Attachment B.

3. Because this warrant seeks the prospective collection of information, including

cell-site location information, that may fall within the statutory definitions of information

1

collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the government has obtained a separate order that complies with the requirements of the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127.  The Court authorized an order to install and use pen register and trap and trace devices related to **MONTOYA PHONE 7** in 20-MR-1506.

4.      I am a Special Agent with the United States Drug Enforcement Administration ("DEA"), and have been since April 2019. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses, to include those enumerated in 18 U.S.C. § 2516.

5.      I graduated from the DEA Training Academy in Quantico, Virginia, after receiving approximately 16 weeks of specialized narcotics related training. While at the DEA Training Academy I became familiar with how controlled substances are consumed, manufactured, packaged, marketed, and distributed. I received training on surveillance and counter-surveillance operations, undercover operations, confidential source operations, criminal law, and investigations involving federal electronic surveillance statutes, to include Title III wiretaps, drug identification, search warrant executions, and vehicle stops.

6.      My experience as a Special Agent includes, but is not limited to, conducting surveillance, interviewing witnesses, writing affidavits for and executing search and seizure warrants, debriefing defendants and confidential sources and working with undercover agents and informants.  I have received training and have experience in the investigation of violations of the federal drug and money laundering laws, including the offenses listed below.  As a result, I am familiar with matters including, but not limited to, the means and methods used by drug traffickers and drug trafficking organizations to purchase, transport, store, and distribute illegal drugs and to

hide profits generated from those transactions. I also have experience in analyzing and interpreting drug codes and cryptic dialogues used by drug traffickers. I have spoken to other law enforcement officers with similar experience.

7.     This case is being investigated by the DEA. I have personally participated in the investigation. I make this affidavit based on my participation in the investigation, and based on reports and information made available to me by other agents and Task Force Officers ("TFOs"), as well as other law enforcement authorities. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge or surrounding facts pertaining to this matter.

8.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 have been committed, are being committed, and will be committed by Eustacio J. MONTOYA ("MONTOYA") and his co-conspirators to facilitate drug trafficking activities. There is also probable cause to believe that the location information of **MONTOYA PHONE 7**, described in Attachment B, will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses, sources of supply, and stash house locations used by MONTOYA and others.

9.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10.     The DEA is currently conducting an investigation of MONTOYA and his drug trafficking activities regarding violations of 21 U.S.C. §§ 841 and 846. This investigation targets

the MONTOYA's poly-drug trafficking organization ("MONTOYA DTO"), operating in Albuquerque, NM. During the course of this investigation, agents have obtained evidence of the drug conspiracy through reliable confidential source ("CS") statements, multiple CS and undercover ("UC") controlled purchases, surveillance, toll analysis, and other investigative techniques.

11.    In September 2018, DEA agents from the Albuquerque District Office ("ADO") assisted DEA agents from El Paso, Texas with a controlled delivery of approximately three kilograms cocaine in Albuquerque, NM. The cooperating defendant ("CD") was to meet the recipient of the cocaine at a public venue in northwest Albuquerque, NM. The CD who assisted in the buy/bust operation informed agents that the cocaine had recently crossed into the United States via the El Paso, TX Port of Entry. Once surveillance was established at the meet location, agents observed a silver sport utility vehicle ("SUV") arrive and briefly meet with the CD.  The SUV then departed away with surveillance units following behind it. A short time later, surveillance units attempted to initiate a traffic stop, utilizing emergency red/blue lights and sirens, and observed the driver of the SUV throw a white bag and packages from the driver's side window of the vehicle. These objects were later identified as the three kilograms of cocaine that were originally given to the CD in order to complete the controlled delivery. Agents initiated a stop on the SUV and the driver was taken into custody by DEA agents. Through the course of the investigation, agents gained information indicating that the three kilograms of were destined for MONTOYA and that MONTOYA lived in Albuquerque, NM.  Agents queried MONTOYA in law enforcement databases and discovered the following: MONTOYA's criminal history was extensive with multiple arrests for drugs and aggravated assault.

12.     In September 2019, a CS[1] provided information to agents regarding the

MONTOYA DTO. The CS stated that the MONTOYA DTO distributes large quantities of

heroin, methamphetamine, cocaine, and suspected fentanyl pills in Albuquerque, NM. Further,

the CS stated Arturo RUIZ ("RUIZ") is considered MONTOYA's right-hand man and is a poly-

drug trafficker for the MONTOYA DTO. Since September 2019, agents have made five

controlled purchases of heroin and have also successfully introduced a UC to RUIZ. The latest

CS controlled purchase occurred in early August 2020 when the CS purchased over 400 grams of

heroin from RUIZ. Additionally, agents believe they have observed MONTOYA meeting RUIZ

on four occasions prior to and/or after RUIZ selling the CS heroin, including the most recent

controlled purchase in August 2020. Agents believe the purpose of these meetings was to supply

RUIZ with the drugs that RUIZ distributes, and/or to collect drug proceeds that RUIZ has

obtained from selling drugs.

## Controlled Buys Involving MONTOYA

### January 2020 CS Controlled Buy

13.     In January 2020, agents conducted a controlled purchase of over 20 grams of

heroin from RUIZ, utilizing the CS. Prior to the controlled purchase between RUIZ and the CS,

agents observed a white Chevy Aveo, bearing NM license plate JMR171,[2] meet with RUIZ just

moments before the CS arrived to the meet location. The white Chevy Aveo departed from the

area prior to the CS arriving. Agents were unable to identify the driver of the Aveo at that time.

---

[1] This CS has been vetted by DEA. This CS has provided trustworthy information that has been corroborated by
DEA agents. This CS has never been found to be untruthful with agents and continues to provide reliable and
accurate information.

[2] According to NM Department of Motor Vehicles ("DMV"), plate JMR171 is registered to Jonathan and Ernestine
Dykstra, at 9000 Zuni Road SE, Unit G-27, Albuquerque, NM, on a 2004 white Chevy Aveo.

After the controlled buy, agents took custody of the heroin from the CS and surveillance was established on RUIZ. Agents followed RUIZ to his residence located at 224 Atrisco Vista Boulevard, Trailer #528, Albuquerque, NM. As surveillance on RUIZ was terminated, agents observed the above-mentioned white Chevy Aveo heading eastbound on Central Avenue SW from Atrisco Vista Boulevard. Surveillance was then established on the Chevy Aveo. Agents observed the Chevy Aveo parked in front of the El Mesquite Market located at 100 98th Street NW, Albuquerque, NM. Agents then observed MONTOYA exit the passenger's side of a white Dodge truck, bearing NM license plate 275WCN,[3] carrying a black backpack on his shoulder. Agents observed MONTOYA walk towards the rear driver's side door of the white Chevy Aveo, open it, and place the backpack inside. MONTOYA then entered the driver's seat of the white Chevy Aveo and both vehicles departed from the parking lot.

14.     Based on the brief meeting between MONTOYA and the driver of the white Dodge truck, agents believe MONTOYA was sourcing the driver of the white Dodge truck with illegal drugs. Although agents were unable to identify the driver of the Aveo at the time, based on the later surveillance where MONTOYA was observed as the driver of the Aveo, agents also believe that MONTOYA was sourcing RUIZ with illegal drugs prior to RUIZ's meeting with the CS. In this instance, MONTOYA was utilizing a vehicle (the white Chevy Aveo) that agents have not previously seen him use before and is not registered to him. I know from my training and experience that it is common for drug traffickers to make varied use of multiple vehicles in an attempt to evade law enforcement detection.

---

[3] According to NM DMV, plate 275WCN is registered to Rosendo Garcia, at 924 Pacific Avenue SW, Albuquerque, NM, on a 2016 white Dodge Ram.

June 2020 CS Controlled Buy

15.     In June 2020, agents met with a CS at a predetermined location in order to conduct a controlled purchase of over 20 grams of heroin from RUIZ. There, agents searched the CS and his/her vehicle for contraband and none was located. The CS, under the direction of agents, placed a recorded phone call to RUIZ in order to arrange the purchase of heroin. RUIZ answered and during this phone conversation, RUIZ informed the CS that he (RUIZ) was waiting on "Ol' Boy"[4] and that he would not be back until later tonight.  RUIZ restated that he would not be able to sell the CS heroin until 5:00 p.m. - 5:30 p.m. that evening. The CS replied to RUIZ that he/she would attempt to purchase the heroin in the next couple of days.

16.     The following day, agents met with the CS at a predetermined location in order to conduct a controlled purchase of over 20 grams of heroin from RUIZ. There, agents searched the CS and his/her vehicle for contraband and none was located. The CS, under the direction of agents, placed a recorded phone call to RUIZ in order to arrange the purchase of heroin, however, the call went unanswered. The CS then placed a recorded phone call to another phone number RUIZ utilizes. RUIZ answered and during this phone conversation the CS and RUIZ agreed to meet at a public location in the northwest part of Albuquerque, NM, for the purpose of conducting a heroin deal. Just before noon, agents established surveillance at the location where RUIZ agreed to meet the CS.  During this time, agents observed three males standing outside and agents identified two of the males as RUIZ and MONTOYA. Agents also observed a blue

---

[4] Through the course of this investigation, and in conjunction with reliable CS statements and surveillance, agents believe that when RUIZ refers to "Ol' Boy," Ruiz is referring to MONTOYA. Agents also believe that MONTOYA is RUIZ's heroin source of supply and have observed MONTOYA meeting RUIZ prior to and/or after RUIZ selling heroin to the CS on four occasions. As previously stated and per CS, RUIZ is MONTOYA's "right-hand man."

GMC Sierra truck, bearing NM license plate UNM32209,[5] parked curbside. Agents then observed MONTOYA enter the driver's seat of the blue GMC truck and depart from the area. Agents established surveillance on MONTOYA and followed MONTOYA to his residence located at, 6815 Toratolla Court NW, Albuquerque, NM.

17.    Approximately one (1) hour later, agents provided the CS with a recording device and U.S. currency. Agents then followed the CS to the meet location and observed the CS arrive and exit his/her vehicle, where he/she was met by RUIZ, who was outside. Agents then observed the CS and RUIZ enter the CS' vehicle. Moments later, agents observed the CS and RUIZ exit the CS vehicle and continue talking outside. Approximately one (1) minute later, agents observed the CS enter his/her vehicle and depart from the area. Agents then followed the CS back to a predetermined location and took custody of the heroin from the CS. Agents searched the CS and his/her vehicle and did not locate any contraband. The CS confirmed that the exchange was made with RUIZ. The purchased heroin was transported to the ADO, where it field-tested positive for heroin. The heroin was subsequently sent to a DEA laboratory for analysis and safekeeping.

18.    Based on RUIZ referencing the need to meet with "Ol' Boy" prior to conducting the drug transaction with the CS, and RUIZ being observed meeting with MONTOYA approximately one hour before the CS transaction, agents believe that this is another example of MONTOYA acting as the source of supply for RUIZ.

### August 2020 CS/UC Controlled Buy

19.    In August 2020, agents met with the CS and UC at a predetermined location in

---

[5] According to NM DMV, plate 32209UNM is registered to Eustacio and Valerie Ann Montoya at 6815 Toratolla Court NW, Albuquerque, NM. Agents have also seen MONTOYA utilize this vehicle to meet with RUIZ prior to the CS making controlled purchases of heroin from RUIZ.

order to conduct a controlled purchase of over 400 grams of heroin from RUIZ. There, agents searched the CS for contraband and none was located. The CS, under the direction of agents, placed a recorded phone call to RUIZ in order to arrange the purchase of heroin. During this phone conversation, RUIZ informed the CS that he (RUIZ) could meet at a public location in northeast Albuquerque to conduct the heroin deal. Shortly after, the CS, under the direction of agents, placed a second recorded phone call to RUIZ to assure the heroin deal was going to take place. During this phone conversation, RUIZ informed the CS that he (RUIZ) would call his guy and call the CS back. Shortly after, the CS, under the direction of agents, placed a third recorded phone call to RUIZ. RUIZ answered and stated he was still waiting for "him" to call back. Further, RUIZ stated, "we should be good, I told him last night." Based on the phone conversations between the CS and RUIZ, agents believe RUIZ referring to "him" references MONTOYA as the source for the heroin.

20.     During the duration of time the recorded phone conversations between RUIZ and the CS were taking place, agents, utilizing cell phone precision location information for the cellular phone assigned to MONTOYA PHONE 1 (an additional phone used by MONTOYA), found MONTOYA's blue GMC Sierra truck, bearing license plate 32209UNM, at a public location in northwest Albuquerque. Shortly after agents found MONTOYA's blue GMC truck, agents observed MONTOYA depart from the public location and arrive at his residence located at 6815 Toratolla Court NW, Albuquerque, NM. Agents observed MONTOYA exit the blue GMC truck and enter the residence through the garage. Shortly after, agents observed MONTOYA exit the residence, enter the driver's side of the blue GMC truck, and depart from the area. Agents followed MONTOYA to a residence located at 3216 Cypress Drive SW,

Albuquerque, NM.[6] Shortly after MONTOYA's arrival, agents also observed a white Dodge Ram truck bearing license plate 275WCN arrive to the residence. As mentioned above, this white Dodge Ram truck had been previously observed meeting with MONTOYA at the El Mesquite Market after a CS controlled purchase of heroin in January 2020.

21.     While surveillance observed MONTOYA at the Cypress Drive address, agents had also established surveillance at RUIZ's residence located at 224 Atrisco Vista Boulevard, Trailer #528, Albuquerque, NM. Agents observed RUIZ depart from the trailer in a gray Ford Ranger bearing NM license plate 224WPG.[7] Approximately ten minutes after MONTOYA's arrival, agents observed RUIZ arrive to 3216 Cypress Drive SW in the gray Ford Ranger. Agents observed a male wearing a black t-shirt exit the passenger side of the white Dodge truck, walk towards the passenger side of the blue GMC truck, briefly open the passenger-side door, and then close it. The male then walked towards the passenger side of RUIZ's gray Ford Ranger. Moments later, agents observed the male wearing the black t-shirt walk from RUIZ's vehicle. Agents observed RUIZ depart from the residence and surveillance was established on RUIZ. Agents observed RUIZ, without making any stops, arrive at the public location in northeast Albuquerque to meet with the CS and UC for the controlled purchase of heroin.

22.     Prior to RUIZ's arrival, agents provided the CS and UC with a recording device and U.S. currency, then followed the CS and UC to the meet location. Upon RUIZ's arrival, agents observed the CS exit the passenger's side of the UC vehicle and enter the passenger's side

---

[6] Based on the cell phone precision location information for MONTOYA PHONE 1, agents received a 201 meter ping from T-Mobile at approximately 12:35 p.m., which placed the ping in the area of 3216 Cypress Drive SW, until approximately 1:20 PM.

[7] According to NM DMV, plate 224WPG is registered to PV Holding Corporation, at 3400 University Boulevard SE, Albuquerque, NM, on a 2020 Gray Ford Ranger. Agents know this is a rental vehicle being utilized by RUIZ.

of RUIZ's vehicle. Moments later, agents observed the CS exit RUIZ's vehicle and enter the passenger's side of the UC vehicle. Approximately one (1) minute later, agents observed the CS exit the UC vehicle again and enter the passenger's side of RUIZ's vehicle. Moments later, agents observed the CS exit RUIZ's vehicle and enter the UC vehicle. Agents then followed the CS and UC back to a predetermined location and took custody of the heroin from the CS and UC. Agents searched the CS and did not locate any contraband. The CS confirmed that the exchange was made with RUIZ. The purchased heroin was transported to the ADO, where it field-tested positive for heroin and weighed approximately 415 grams. The heroin was subsequently sent to a DEA laboratory for analysis and safekeeping.

23.     After the meet between RUIZ and the CS/UC, agents maintained surveillance on RUIZ. Agents observed RUIZ depart the parking lot where the meet occurred and without making any stops, agents followed RUIZ back to the residence located at 3216 Cypress Drive SW. Agents observed MONTOYA's blue GMC truck still at the residence. Upon RUIZ's arrival, agents observed RUIZ exit the driver's side of the gray Ford Ranger and enter the passenger's side of the blue GMC truck. Approximately twenty (20) minutes later, surveillance was terminated and no other activities were observed.

24.     Agent believe that RUIZ again meeting with MONTOYA shortly before a drug transaction with the CS is another example of MONTOYA acting as the source of supply for RUIZ. RUIZ returning to meet with MONTOYA after the deal is consistent with RUIZ paying MONTOYA a portion of the proceeds received from the drug sale.

### Use of MONTOYA PHONE 6

25.     On September 17, 2020, the Honorable Kea W. Riggs authorized a Title III order permitting the interception of electronic communication to and from MONTOYA PHONE 6. On

September 18, 2020, agents began intercepting electronic communications over MONTOYA
PHONE 6.

26.     On September 18, 2020, at approximately 4:54 p.m., agents intercepted electronic
communications on MONTOYA PHONE 6 from (505) 250-4602, a phone used by Arturo RUIZ
(RUIZ PHONE 8)[8]. The following is a transcription of the text conversations which occurred in
English:

RUIZ:           U good for the gay guy...?

MONTOYA:        ya how many

RUIZ:           Just 1

RUIZ:           1 for scrap too..

MONTOYA:        ok

27.     During this conversation, RUIZ asks MONTOYA, "U good for the gay guy...?"[9]
Agents believe based on previous surveillances during the interception of RUIZ PHONE 6,[10]
RUIZ is asking MONTOYA if he (MONTOYA) can supply RUIZ with heroin for RUIZ's
customers. RUIZ's reference to "Just 1" is believed to mean one ounce of heroin for the "gay
guy," who agents believe is Jose RODRIGUEZ. Additionally, RUIZ's reference to "1 for scrap

---

[8] On August 27, 2020, a reliable DEA CS informed agents that RUIZ was now utilizing (505) 250-4602 (RUIZ
PHONE 8) by showing agents a text message received from RUIZ from the telephone number associated with RUIZ
PHONE 8. The text message stated, "New number ... Q." Agents believe "Q" referred to RUIZ's nickname, "Quic."

[9] On August 14, 2020, at approximately 8:43 a.m., agents intercepted a text message from RUIZ to
MONTOYA stating, "Gay guy gonna wanna grab 2 today..." Later that day, agents observed RUIZ meet with Jose
Alonso RODRIGUEZ, who agents believe was the drug customer referenced earlier in the day that wanted two
ounces of heroin.

[10] On August 13, 2020, the Honorable Kea W. Riggs, United States District Judge for the District of New Mexico
signed an order in 20-MR-1092 authorizing the interception of wire communications over a cellular phone used by
RUIZ (RUIZ PHONE 1) and wire and electronic communications over a cellular phone used by RUIZ (RUIZ
PHONE 6) for a period of 30 days.

too..." is believed to mean that RUIZ wants an additional ounce of heroin for a customer identified as "scrap."

28.     On this same date and in conjunction with the intercepted text messages between MONTOYA and RUIZ as mentioned above, agents received precision location data for MONTOYA PHONE 6 with a longitude of 106 32 46.219W and a latitude of 35 04 17.623N and a radius of 46 meters. These coordinates placed MONTOYA PHONE 6 approximately in the middle of a trailer park community located at 9000 Zuni Road SE[11]. Agents observed MONTOYA's black Range Rover SUV[12] at the intersection of Zuni Road SE and Wyoming Boulevard SE, traveling northbound and away from 9000 Zuni Road SE. Due to the dark windows of the black Range Rover SUV, agents were unable to positively identify the driver of the vehicle. At approximately 6:47 p.m., agents observed, via electronic surveillance, MONTOYA's black Range Rover arrive at his residence located at 6815 Toratolla Court NW, Albuquerque, NM.

29.     On September 18, 2020, at approximately 6:52 p.m., agents intercepted electronic communications on MONTOYA PHONE 6 from RUIZ PHONE 8. The following is a transcription of the text conversations which occurred in English:

[Electronic Communication Continues Later That Day]

MONTOYA:       ready

RUIZ:          Yup

MONTOYA:       go totha pad

---

[11] MONTOYA has been observed on previous surveillances frequently visiting 9000 Zuni Road SE, Trailer #W46. This is believed to be a stash house location for the MONTOYA drug trafficking organization.

[12] According to NM Department of Motor Vehicles ("DMV"), license plate AARK90 is registered to Eustacio J. MONTOYA (DOB ███/1980) at 6815 Toratolla Court NW, Albuquerque, NM.

RUIZ:                Omw

30.     During this text exchange, MONTOYA is asking RUIZ if he is ready and RUIZ responds with "Yup." MONTOYA advises RUIZ to "go totha pad," which agents believe to be MONTOYA's residence. RUIZ responds with "Omw," which agents believe is an acronym for "on my way." Shortly after the text exchange transcribed above, agents observed RUIZ's black Honda Civic bearing NM license plate ATSH02 depart from 224 Atrisco Vista Boulevard, Trailer #528, the known residence for RUIZ. Agents maintained surveillance on RUIZ and followed him to the vicinity of MONTOYA's residence without making any stops. At approximately 7:36 p.m., agents observed RUIZ arrive at 6815 Toratolla Court NW. At approximately 7:48 p.m., agents observed RUIZ in the driveway area of the residence and moments later, agents observed RUIZ depart from 6815 Toratolla Court NW. Agents maintained surveillance on RUIZ and observed him arrive back to his residence located at 224 Atrisco Vista Boulevard, Trailer #528.

31.     Based on intercepted communications between MONTOYA and RUIZ, surveillance, and the investigation thus far, agents believe that MONTOYA picked up at least two ounces of heroin at 9000 Zuni Road SE, Trailer #W46 and brought it back to his residence. At MONTOYA's residence, the heroin was then given to RUIZ in order for RUIZ to sell it to his customers.

32.     On September 21, 2020, at approximately 12:37 p.m., agents intercepted electronic communication on MONTOYA PHONE 6 from RUIZ using RUIZ PHONE 8. The following is a transcription of the text conversations which occurred in English:

MONTOYA:        what up with them light greens you gonna want some
RUIZ:             I wanna get a few and see if they go...just don't want get stuck with
                  them...

| RUIZ: | But if they go, I'll get'em all! |
| MONTOYA: | ima dump the bag i cant wait |
| RUIZ: | Ok |
| RUIZ: | Way |
| MONTOYA: | heights |
| MONOTYA: | zuni |
| RUIZ: | Ok, I'm going to RR then I can go that way, u gonna b up there for a min |
| MONTOYA: | ya |
| RUIZ: | U at the boys..?? |

33.     Agents believe the text exchange transcribed above is a communication between MONTOYA and RUIZ in reference to MONTOYA supplying RUIZ with "light greens," which agents believe is suspected fentanyl pills that are light green in color. MONTOYA also informs RUIZ that he is at "zuni," which agents believe is 9000 Zuni Road SE, Trailer #W46. Additionally, agents conducted surveillance during this time and followed MONTOYA from his residence located at 6815 Toratolla Court NW to 9000 Zuni Road SE, Trailer #W46. Agents observed MONTOYA's gray GMC truck bearing NM temporary tag 20T-300654[13] parked at trailer #W46 and four unidentified males standing in the street in front of the trailer. Shortly after, agents observed RUIZ's black Infiniti SUV proceed into the 9000 Zuni Road SE trailer park and make a westbound turn towards trailer #W46. Approximately 15 minutes later, agents observed RUIZ's black Infiniti SUV departing from the vicinity of trailer #W46.

34.     Based on intercepted communications between MONTOYA and RUIZ,

---

[13] According to NM DMV, NM temporary tag 20T-300654 is registered to Eustacio MONTOYA (DOB: ▮▮▮/1980) on a gray 2020 GMC Sierra, agents identified MONTOYA utilizing this vehicle on September 21, 2020, earlier in the day.

surveillance, and the investigation thus far, agents believe that RUIZ went to 9000 Zuni

Road SE, Trailer #W46 to pick up the light green suspected fentanyl pills from MONTOYA in

order to try and sell them to RUIZ's customers. Furthermore, RUIZ informing MONTOYA "But

if they go, I'll get'em all!" indicates to agents that RUIZ will get all the suspected fentanyl pills

MONTOYA has if RUIZ can easily sell the small amount he initially gets from MONTOYA.

35.     On September 26, 2020, at approximately 1:14 p.m., agents intercepted electronic

communication on **MONTOYA PHONE 6** from RUIZ using RUIZ PHONE 8. The following is

a transcription of the text conversations which occurred in English:

| RUIZ: | Chico.. u still good for the gay guy... |
| MONTOYA: | Ya |
| RUIZ: | Lmk when ur ready |

At approximately 4:58 p.m.:

| MONTOYA: | You ready |
| RUIZ: | Been ready all day |
| MONTOYA: | Way |
| RUIZ: | I just got home |
| MONTOYA: | Im at my pad |
| RUIZ: | On my way |
| RUIZ: | Pulling up |

36.     During the text exchange transcribed above, RUIZ reaches out to MONTOYA

and asks if he's "still good for the gay guy..." Agents believe based on previous surveillances

during the interception of RUIZ PHONE 6, RUIZ is asking MONTOYA if he (MONTOYA) can

supply RUIZ with heroin for RUIZ's customer, Jose RODRIGUEZ ("gay guy").  RUIZ then

states, "Lmk when ur ready." Agents believe "Lmk" is an acronym for "let me know" and RUIZ is advising MONTOYA to let him (RUIZ) know when MONTOYA is ready to provide RUIZ with the heroin for RUIZ's customer. Later in the day, MONTOYA asks RUIZ if he is ready. RUIZ informs MONTOYA that he has been ready all day and that he is currently at home. MONTOYA responds to RUIZ with "Im at my pad," which agents believe is MONTOYA's residence. RUIZ informs MONTOYA that he is on his way to MONTOYA's residence.

37.     On this same date, agents conducted surveillance in conjunction with the electronic communication that was being intercepted over MONTOYA PHONE 6 between MONTOYA and RUIZ throughout the day. Based on previous surveillances referencing the above mentioned communication between MONTOYA and RUIZ, agents established surveillance in the vicinity of 9000 Zuni Road SE at approximately 3:32 p.m. At approximately 4:40 p.m., agents observed MONTOYA's gray GMC truck bearing NM temporary tag 20T-300654 arrive to the trailer park and proceed westbound towards trailer #W46. Agents were able to positively identify MONTOYA as the driver of the gray GMC truck. At approximately 4:59 p.m., agents observed MONTOYA's gray GMC truck departing from the vicinity of trailer #W46 and proceed to travel out of the trailer park and proceed westbound on Zuni Road SE. Agents maintained surveillance on MONTOYA. Agents followed MONTOYA to his residence located at 6815 Toratolla Court NW, where he arrived at approximately 5:22 p.m. At approximately 5:21 p.m., agents received an intercepted text message from MONTOYA PHONE 6 to RUIZ stating, "Im at my pad," which coordinated with the timing agents observed MONTOYA arrive at his residence. Based on the surveillance and text messages, agents believe this shows MONTOYA was the user of MONTOYA PHONE 6. At approximately 5:46 p.m., agents observed RUIZ's Infiniti SUV bearing NM license plate ASZM36 arrive to

MONTOYA's residence. At approximately 6:14 p.m., agents observed RUIZ walking from the garage area of MONTOYA's residence and get into the driver's seat of the black Infiniti SUV. Moments later, agents observed RUIZ departing from the area. Agents maintained surveillance on RUIZ and followed him to an AutoZone located at 5700 Quail Road NW, Albuquerque, NM. Agents observed RUIZ exit the driver's seat of the black Infiniti SUV and proceed to walk inside the AutoZone, disappearing out of view. Minutes later, agents observed RUIZ walking from the front entrance of the AutoZone towards the driver's side of the black Infiniti SUV and shortly after RUIZ departed from the area. Agents then observed RUIZ travel to the Wells Fargo bank located at 3401 Coors Boulevard NW, Albuquerque, NM, and proceed through the drive-through. Minutes later, RUIZ departed from the Wells Fargo bank at a high rate of speed. Agents were able to follow RUIZ to the vicinity of 4th Street NW and Mountain Road NW; however, agents were unsuccessful at maintaining surveillance on RUIZ, and subsequently terminated surveillance on RUIZ.

38.     Based on intercepted communications between MONTOYA and RUIZ, surveillance, and the investigation thus far, agents believe that MONTOYA picked up an unknown amount of heroin at 9000 Zuni Road SE, Trailer #W46 and brought it back to his residence. At MONTOYA's residence, agents believe the heroin was then given to RUIZ in order for RUIZ to sell it to his customer, Jose RODRIGUEZ. Agents believe that the above evidence shows that MONTOYA was using MONTOYA PHONE 6 to facilitate his drug trafficking.

39.     On Friday, October 2, 2020, at approximately 8:48 a.m., agents began intercepting electronic communication between MONTOYA and phone number (505) 347-5082,

a phone number believed to be utilized by Alex VALLEJOS, over MONTOYA PHONE 6[14].
These conversations arranged a suspected drug meeting between MONTOYA and
VALLEJOS. The following is a transcription of the text conversation which occurred in English:

      MONTOYA:      Let me no what up asap

40.     Agents believe that MONTOYA's outgoing message to VALLEJOS was to ask
VALLEJOS if a drug deal was going to take place. At approximately 1:31 p.m., agents located
MONTOYA's vehicle, via GPS ping location information, parked at a public venue in NE
Albuquerque, NM[15]. Agents then observed MONTOYA depart from the public venue and enter
the driver's seat of his gray GMC pickup truck and depart from the parking lot. Surveillance was
then established on MONTOYA.

41.     At approximately 2:01 p.m., agents intercepted an outgoing text from
MONTOYA PHONE 6 to VALLEJOS. The following is a transcription of the text conversation
which occurred in English:

      MONTOYA:      Im ready bud

42.     Agents believe that MONTOYA was informing VALLEJOS that he was ready to
conduct the drug deal with VALLEJOS.

43.     At approximately 2:16 p.m., agents intercepted an incoming text from
VALLEJOS to MONTOYA PHONE 6. The following is a transcription of the text conversation
which occurred in English:

---

[14] Between approximately 10:24 a.m. and 1:51 p.m., there were several wire communications between
MONTOYA and VALLEJOS, however, court authorization was not granted to monitor wire communication over
MONTOYA PHONE 6.

[15] On September 4, 2020, the Honorable Kirtan Khalsa, United States Magistrate Judge, approved an order for GPS
location data on MONTOYA PHONE 6.

VALLEJOS:          Ok

44.     At approximately 2:02 p.m., agents observed, via electronic surveillance,

MONTOYA arrive to his residence located at 6815 Toratolla Court NW, Albuquerque, NM.

Approximately twenty minutes later, agents observed MONTOYA walk from the vicinity of the

garage towards the rear passenger's side of the gray GMC truck carrying a rectangular

shaped, red-colored box under his left arm. Agents observed MONTOYA open

the rear passenger's side door and it appeared as if he placed the box inside the vehicle. Moments

later, agents observed MONTOYA close the rear passenger's side door with nothing in hand.

Shortly after, agents observed MONTOYA enter the driver's seat and depart from his residence.

At this time agents were unable to maintain surveillance on MONTOYA.

45.     At approximately 2:26 p.m., agents intercepted an outgoing text to VALLEJOS

on MONTOYA PHONE 6.[16] The following is a transcription of the text conversation which

occurred in English:

MONTOYA:          Whats tha add

46.     Agents believe that when MONTOYA said "Whats tha add", MONTOYA is

asking VALLEJOS for the address of their meet location. At approximately 2:49 p.m., agents

received GPS ping location for MONTOYA PHONE 6 in the vicinity of San Ildefonso Drive

NW and Sierra Linda Avenue NW. Approximately four minutes later, agents observed

MONTOYA's gray GMC truck parked curbside, facing south at Montano West Park located in

the vicinity of 5712 Hayes Drive NW. At approximately 3:02 p.m., agents observed a white

---

[16] Between approximately 2:27 p.m. and 3:03 p.m., there were several wire communications between
MONTOYA and VALLEJOS, however, the context of these communications are unknown.

sedan bearing NM license plate NXY745[17] arrive at Montano West Park and park curbside, facing south. Agents then observed MONTOYA's gray GMC truck reverse towards the white sedan in order to get closer.

47.     Moments later, agents observed a male, who agents positively identified as VALLEJOS, exit the driver's side of the white sedan and walk towards the front of the vehicle in between VALLEJOS' vehicle and MONTOYA's gray GMC truck. Agents observed VALLEJOS walk back towards the rear passenger's side of the white sedan, open the door, and retrieve a black duffel bag from the backseat. Agents observed VALLEJOS then walk towards the driver's side window of MONTOYA's gray GMC truck. Shortly after, agents observed VALLEJOS walk back towards the rear passenger's side of the white sedan with the black duffel bag, open the rear passenger's side door, and place the black duffel bag in the backseat of the vehicle. At approximately 3:05 p.m., agents observed VALLEJOS walk back towards the driver's side of MONTOYA's truck, around the front of the vehicle, and towards the front passenger's side door. Agents observed VALLEJOS open the front passenger's side door, enter the vehicle, and close the door.

48.     At approximately 3:24 p.m., agents observed VALLEJOS exit the passenger's seat of MONTOYA's truck carrying a rectangular shaped, red box under his left arm and observed the trunk of the white sedan was slightly opened. Moments later, agents observed VALLEJOS walk towards the trunk of the white sedan, place the box inside the trunk, and then close it. Approximately two minutes later, agents observed MONTOYA depart from the area. Agents then observed VALLEJOS walk towards the front yard of a nearby residence and interact with

---

[17] According to NM DMV, NM license plate NXY745 is a white 2013 Chevrolet sedan registered to: Christina A. Vallejos; DOB: 07/28/███; 1551 Don Pasqual, Los Lunas, NM 87031. Agents believe that Christina A. Vallejos is VALLEJOS' wife.

an unidentified male ("UM"). At approximately 3:30 p.m., agents observed VALLEJOS walk

towards the white sedan, enter the driver's seat, and depart from the area. Surveillance was then

established on VALLEJOS.

49.     Based on the text messages intercepted from MONTOYA PHONE 6 indicating

that MONTOYA was preparing to meet with VALLEJOS, and then surveillance observing

VALLEJOS and MONTOYA meeting, is another example demonstrating MONTOYA was the

user of MONTOYA PHONE 6.

50.     Approximately eight minutes later, agents initiated a traffic stop on VALLEJOS

in the NW part of Albuquerque, NM. VALLEJOS was the sole occupant and driver of the

vehicle. Agents asked VALLEJOS where he was coming from, to which VALLEJOS stated that

he was coming from working on a job off of Hayes Drive NW. Agents then asked VALLEJOS if

he could open the trunk of his vehicle to continue the search. Upon opening the trunk, agents

observed the same rectangular-shaped red box that VALLEJOS was seen carrying from

MONTOYA's truck. Agents then proceeded to open the red box and observed a large

rectangular-shaped package, wrapped with duct-tape and masking tape. Based on training and

experience, agents believed that the package discovered in the red box was wrapped in a manner

consistent with drug trafficking. VALLEJOS was then asked about content of the red box located

in the trunk of his vehicle and VALLEJOS stated he did not know what was inside the box and

that he had bought the tool from someone.

51.     Based on the seizure of drugs and the communications between MONTOYA and

VALLEJOS leading up to the seizure of drugs, agent believe that this shows MONTOYA

PHONE 6 was used to facilitate MONTOYA's drug trafficking activities.

52.     Agents then took custody of the suspected cocaine contained within the red

box and subsequently released VALLEJOS. Agents transported the suspected cocaine to the

Albuquerque District Office ("ADO") and conducted a field test, which tested presumptive

positive for the presence of cocaine and weighed approximately 1,227 gross grams.

### Identification of MONTOYA PHONE 7

53.     Since late-2019, agents have identified seven phones that have been or are still

currently being used by MONTOYA. On October 3, 2020, agents became aware that

MONTOYA PHONE 6 started to have very minimal usage.[18] On October 8, 2020, a DEA

Intelligence Analyst ("IA") conducted a common call analysis of the prior contacts of

MONTOYA PHONE 6 and identified (505) 261-5982 (**MONTOYA PHONE 7**) as a possible

replacement phone for MONTOYA PHONE 6. On that same date, analyzing the date range of

October 3, 2020 to October 6, 2020, the common call analysis indicated **MONTOYA PHONE 7**

has 19 unique contacts and 11 of those contacts are also contacts of MONTOYA PHONE 6,

making 58 percent of the contacts the same.[19] One of the common contacts between MONTOYA

PHONE 6 and **MONTOYA PHONE 7** is telephone number (505) 818-1135, a T-Mobile

number subscribed to Gerald GARCIA at 1401 Pennsylvania Street NE, Apt 2136, Albuquerque,

NM. Based on toll analysis, **MONTOYA PHONE 7** has been in contact with (505) 818-1135 15

---

[18] MONTOYA PHONE 6 was activated on August 27, 2020. Based the pattern that agents have observed of MONTOYA discontinuing use of a phone after approximately 30 days, agents expected that MONTOYA would discontinue using MONTOYA PHONE 6 during the fourth week of September 2020. However, MONTOYA PHONE 6 started having very minimal usage on October 3, 2020. Agents believe the decrease in usage was a result of the cocaine seizure that occurred on October 2, 2020.

[19] A common call analysis conducted on October 20, 2020, for the date range of October 3, 2020 to October 20, 2020, shows that **MONTOYA PHONE 7** has 28 unique contacts and 11 of those contacts were also contacts of MONTOYA PHONE 6, making 39% of the contacts the same. Agents believe that the commonality percentage has decreased because more prepaid phones with no identified subscriber have begun contacting **MONTOYA PHONE 7**. Based on training and experience, agents know that it is common for individuals involved in drug trafficking to make use of prepaid phones with no subscriber information in an effort to avoid law enforcement protection.

times spanning from October 3, 2020 to October 19, 2020.

54.     During T-III interception of MONTOYA PHONE 6, agents intercepted several

text conversations between MONTOYA and GARCIA, utilizing (505) 818-1135, that agents

believe was indicative of drug trafficking communication. Additionally, agents conducted

surveillance in conjunction with intercepted text communication between MONTOYA and

GARCIA. On September 22, 2020, agents observed GARCIA's blue Chevrolet truck arrive to

MONTOYA's residence located at 6815 Toratolla Court NW. Minutes later, MONTOYA

arrived to his residence and met with the male agents believe was GARCIA. MONTOYA and

GARCIA talked briefly in the driveway of MONTOYA's residence and shortly after, GARCIA

departed from MONTOYA's residence. On September 29, 2020, agents had followed

MONTOYA to 9000 Zuni Road SE, Trailer #W46.[20] Shortly after, agents observed GARCIA's

blue Chevrolet truck bearing NM license plate NPH019[21] arrive to the trailer and depart minutes

later. Based on the intercepted text communication between MONTOYA and GARCIA that

coordinated with the brief meetings that agents observed, agents believe GARCIA is involved

with the drug trafficking activities of the MONTOYA drug trafficking organization.

55.     Agents believe that GARCIA's continued contact with **MONTOYA PHONE 7**

shows that **MONTOYA PHONE 7** was a replacement phone for MONTOYA PHONE 6 and

that **MONTOYA PHONE 7** is being used by MONTOYA to coordinate and facilitate his drug

trafficking activities.

---

[20] As discussed above, agents believe this location is a stash house location.

[21] According to NM DMV, NM license plate NPH019 is registered to Gerald Garcia; DOB 09/15/▮▮▮; 218
Princeton Drive SE, Apt C, Albuquerque, NM, on a 2002 blue Chevrolet truck.

56.     Like almost everyone in today's society, drug trafficker's primary method of communication is through cellular telephones. Drug traffickers use cellular phones to coordinate with sources of supply, customers, associates, and co-conspirators. Cellular telephone are important tools used by drug traffickers to facilitate their activities. Based on my training and experience, I know it is common for drug traffickers to make use of multiple phones. This is done in an effort to avoid law enforcement detection. To further this effort, drug traffickers will often make use of a phone for a short period of time, e.g. 30 days, and then activate a new phone that has a new phone number. Additionally, drug traffickers will often use prepaid phones that do not require established accounts or verified personal information.

57.     Agents believe that MONTOYA meeting with RUIZ close in time to when RUIZ sells drugs to the CS and UC is indicative of MONTOYA acting as a source of supply for RUIZ. Additionally, agents also believe that MONTOYA is a source of supply for VALLEJOS.

58.     Based on my training, experience, and knowledge of the investigation, I believe MONTOYA is an active poly-drug trafficker in the Albuquerque, NM area. There is probable cause to believe that the location of **MONTOYA PHONE 7** will continue to reveal evidence of drug trafficking in violation of 21 U.S.C. §§ 841 and 846. The location of **MONTOYA PHONE 7** will continue to assist agents in identifying MONTOYA's co-conspirators, and the locations where MONTOYA receives, distributes, and stores illegal drugs and proceeds.

59.     In my training and experience, I have learned that AT&T is a company that provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as

"tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively

precise location information about the cellular telephone itself, either via GPS tracking

technology built into the phone or by triangulating on the device's signal using data from several

of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers

covering specific geographic areas) that received a radio signal from the cellular telephone and,

in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These

towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles

apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily

serve every call made to or from that device. Accordingly, cell-site data is typically less precise

than E-911 Phase II data.

  60. Based on my training and experience, I know that AT&T can collect E-911 Phase

II data about the location of **MONTOYA PHONE 7**, including by initiating a signal to

determine the location of **MONTOYA PHONE 7** on AT&T's network or with such other

reference points as may be reasonably available.

  61. Based on my training and experience, I know that AT&T can collect cell-site data

about **MONTOYA PHONE 7**. Based on my training and experience, I know that for each

communication a cellular device makes, its wireless service provider can typically determine: (1)

the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell

tower to which the customer connected at the beginning of the communication; (4) the cell tower

to which the customer connected at the end of the communication; and (5) the duration of the

communication. I also know that wireless providers such as AT&T typically collect and retain

cell-site data pertaining to cellular devices to which they provide service in their normal course

of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

62.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

63.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of **MONTOYA PHONE 7** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

64.     I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T.  I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of **MONTOYA PHONE 7** on

AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

65.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **MONTOYA PHONE 7** outside of daytime hours.

66.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

67.     Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

[concluded on subsequent page]

68.     This affidavit has been approved by AUSA Peter J. Eicker.

Respectfully Submitted,

Gillian Polinko,
Special Agent
U.S. Drug Enforcement Administration

Subscribed and sworn telephonically and
signed electronically on this 21st day of
October, 2020,

LAURA FASHING
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**Property to Be Searched**

The cellular telephone currently assigned telephone number (505) 261-5982

("**MONTOYA PHONE 7**"), subscribed to Prepaid Customer, 17330 Preston Road, Dallas,

Texas 75252, whose service provider is AT&T, a wireless telephone service provider with

headquarters at 11760 US Highway 1, Suite 300, N. Palm Beach, FL 33408.

Records and information associated with **MONTOYA PHONE 7** that is within the

possession, custody, or control of AT&T including information about the location of the cellular

telephone, even if it is subsequently assigned a different call number.

2

## **ATTACHMENT B**

### **Particular Things to be Seized**

### I.     **Information to be Disclosed by the Provider**

All information about the location of **MONTOYA PHONE 7** described in Attachment A

for a period of 30 days, during all times of day and night. "Information about the location of

**MONTOYA PHONE 7** includes all available E-911 Phase II data, GPS data, latitude-longitude

data, and other precise location information, as well as all data about which "cell towers" (i.e.,

antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers)

received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter,

"Location Information") is within the possession, custody, or control of AT&T, AT&T is

required to disclose the Location Information to the government. In addition, AT&T must

furnish the government all information, facilities, and technical assistance necessary to

accomplish the collection of the Location Information unobtrusively and with a minimum of

interference with AT&T services. The government shall compensate AT&T for reasonable

expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this

warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18

U.S.C. § 3103a(b)(2).

### II.    **Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence and

instrumentalities of violations of 21 U.S.C. §§ 841 and 846 involving Eustacio MONTOYA and

yet unidentified co-conspirators.

3

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.